UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| **United States of America,**<br>    Plaintiff,<br><br>v.<br><br>**Patsy Wardle,**<br>    Defendant. | Criminal No. 5:18-57-KKC<br><br>OPINION AND ORDER |

\*\* \*\* \*\* \*\* \*\*

This matter is before the Court on Defendant Patsy Wardle's motion requesting that the Court order her release from prison. (DE 386.) On April 24, 2019, a jury convicted Wardle of two counts of distribution of oxycodone and one count of conspiracy to distribute oxycodone. (DE 287 at 2.) Her projected release date is October 21, 2029 and she is currently incarcerated at FCI Perkin.

Wardle now moves the Court to modify her sentence under 18 U.S.C. § 3582(c)(1)(A), which provides for what is commonly referred to as "compassionate release." She states that various sections of the First Step Act of 2018 and her rehabilitative efforts justify early release. For the following reasons, Wardle's motion (DE 386) is dismissed without prejudice.

I.   **Exhaustion of Administrative Remedies**

   A.   **Legal Standard**

Prior to the First Step Act, PL 115–391, 132 Stat 5194 (Dec. 21, 2018), the Court could not grant a motion for compassionate release unless the director of the Bureau of Prisons ("BOP") filed the motion. *See* 18 U.S.C. § 3582(c)(1)(A) (2002). The First Step Act amended § 3582(c)(1)(A) to allow the court to grant a motion for compassionate release filed by the

defendant himself "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A); PL 115–391, 132 Stat 5194 § 603 (Dec. 21, 2018). The Sixth Circuit has determined that the occurrence of one of the two events mentioned in the statute is a "mandatory condition" to the Court granting compassionate release. *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020). If the government "properly invoke[s]" the condition, the Court must enforce it. *Id.* at 834 (citation and quotation marks omitted).

District courts are split as to whether a defendant's administrative remedies have been exhausted under § 3582(c)(1)(A) when the grounds for relief presented in a motion to the Court differ from those included in a compassionate release request to the BOP. *Compare United States v. Parker*, 461 F.Supp.3d 966, 976–77, (C.D. Cal. May 21, 2020) (surveying cases rejecting the argument that an inmate must first raise COVID-19 in a request to the warden to raise COVID-19 in a motion seeking release by the court), *with United States v. Jeffers*, 466 F.Supp.3d 999, 1005–06, (N.D. Iowa June 1, 2020) (collecting cases finding that that COVID-19 must be raised in defendant's request to the BOP). Indeed, within this very circuit district courts have reached opposite conclusions on this issue. *Compare United States v. Poole*, 472 F. Supp. 3d 450, 456 (W.D. Tenn. 2020) ("The statute contains no language requiring that a court consider only arguments raised first to the BOP or requiring a defendant to raise each ground for relief to the BOP."), *with United States v. Asmar*, 465 F. Supp. 3d 716, 719 (E.D. Mich. 2020) (citations omitted) ("Where the factual basis in the administrative request and the motion before the court are different, a defendant does not satisfy the exhaustion requirement.").

While the question of whether § 3582(c)(1)(A) requires "issue exhaustion" has not been directly addressed by the Sixth Circuit, the court has stated that the exhaustion requirement is meant "to implement an orderly system for reviewing compassionate-release applications, not one that incentivizes line jumping." *United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020). In *Alam*, the court stresses that review by the BOP is not "futile" and that "[p]reventing prisoners from charging straight to federal court serves important purposes." *Id.* at 835. Requiring that prisoners first present their arguments in a request to the warden "ensures that the prison administrators can prioritize the most urgent claims" and "that they can investigate the gravity of the conditions supporting compassionate release and the likelihood that the conditions will persist." *Id.*; *see also Asmar*, 465 F. Supp. 3d at 719 ("There is undeniable value in having the BOP make the initial review before an inmate is released . . . [it gives] the BOP the opportunity to gather an inmate's medical documentation and other records, evaluate the request, and decide in the first instance whether it justifies seeking compassionate release or pursuing some other form of relief.").

The Sixth Circuit's opinion in *Alam* suggests that issue exhaustion is required under § 3582(c)(1)(A). *Alam*, 960 F.3d 831. The important purposes of the administrative exhaustion would be undermined if prisoners could present entirely new arguments and issues in a motion without first presenting those arguments to the BOP.

### B. Wardle's Motion is Not Timely

The Government argues that Wardle has not met this requirement, because she did not submit a new compassionate release request to her warden before filing her second motion. In its view, although Wardle has previously requested compassionate release, she has not exhausted her administrative remedies because her second motion makes arguments to the Court that were not first made in a request to the BOP. While at least one court in this circuit has taken a different view and concluded that issue exhaustion is not required, *Poole*,

472 F. Supp. 3d 450, Wardle has failed to satisfy the administrative exhaustion requirement under either an issue exhaustion or more lenient standard.

On July 6, 2020, Wardle submitted a request for compassionate release to the warden of her facility. That request was denied on July 29, 2020 and Wardle then properly filed a motion for compassionate release on February 5, 2021. This Court denied that motion on April 1, 2021, and she filed a notice of appeal on April 5, 2021. While her first motion was still on appeal, she filed the instant motion on August 3, 2021, and the Sixth Circuit has since affirmed this Court's denial of her first motion. (*See* DE 390.)

Wardle's first motion asserted various health conditions and the COVID-19 pandemic as grounds for relief. (DE 359 at 5–8.) Her second motion states that she "isn't in good health" and "has survived being incarcerated through a 'pandemic' [sic]," but she does not assert these as reasons for her release. (DE 386.) Rather, her second motion seeks compassionate release based on certain sections of the First Step Act of 2018 and rehabilitation, (*id.*), entirely new bases that were not included in her first motion or request to her warden. (*See* DE 359 at 5–8, Exhibit 1.)

Wardle's arguments that the First Step Act and rehabilitation constitute grounds for compassionate release were never presented to the BOP and thus plainly fail to satisfy an issue exhaustion requirement. But even under a more lenient view, such as that adopted by the Western District of Tennessee, *Poole*, 472 F. Supp. 3d 450, Wardle has not satisfied the exhaustion requirement. In that case, only one motion and one request to the warden were at issue. Here, Wardle did not merely present new arguments in her first motion following her request to the warden, she asserted new grounds in a completely new motion after her first motion had already been denied and appealed. Two motions are at issue, and the second is entirely unconnected to the initial request made to the warden. Wardle cannot rely on the first request to the warden to satisfy the exhaustion requirement for her second motion.

Common sense supports this conclusion. If a prisoner were only required to make one request to the BOP and forever after able to file new motions asserting new grounds for relief, the purpose of the exhaustion requirement would be severely undermined. It would incentivize exactly the kind of "line jumping" and "charging straight to federal court" that administrative exhaustion is meant to prevent and removes the BOP from the important role it plays in evaluating prisoners' claims. *Alam*, 960 F.3d at 834. Under any interpretation, Wardle's current motion has failed to satisfy the exhaustion requirement of § 3582(c)(1)(A) because she did not submit a request for compassionate release to the warden of her facility.

Because the administrative exhaustion requirement is a mandatory condition that has been properly invoked by the Government, Wardle's motion must be dismissed without prejudice. *Alam*, 960 F.3d at 836.

## II.     Extraordinary and Compelling Reasons

### A.     Legal Standard

Even if Wardle's motion were timely (which it is not), the grounds for relief asserted in her motion do not rise to the level of "extraordinary and compelling." The compassionate release statute permits this Court to "reduce the term of imprisonment" and "impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." 18 U.S.C. § 3582(c)(1)(A). Under the applicable provision of § 3582(c)(1)(A), however, the Court may grant this relief only if it finds that "extraordinary and compelling reasons warrant such a reduction," and the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id*.

The statute does not define what it means to be "extraordinary and compelling." The commentary to the policy statement by the Sentencing Commission applicable to Section 3582(c)(1)(A) provides some guidance; however, the Sixth Circuit has recently determined

the policy statement applies only to motions filed by the BOP and does not apply when a defendant moves for compassionate release on his own behalf. *United States v. Jones*, 980 F.3d 1098, 1108–11 (6th Cir. 2020). In such cases, district courts are no longer constrained by the reasons enumerated in § 1B1.13's application note. *See id.*; *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021); *see also United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). Thus, courts need not rely on the application note as binding in its analysis; instead, a court may exercise its "full discretion" to determine whether the defendant has demonstrated extraordinary and compelling reasons for compassionate release, *Jones*, 980 F.3d at 1111, and, if so, whether the § 3553(a) factors weigh in favor of release.

### B. Wardle's Grounds Are Not "Extraordinary and Compelling"

Wardle's motion for compassionate release does not assert grounds for relief that the Court could deem "extraordinary and compelling." The motion cites various sections of the First Step Act as well as her rehabilitative efforts, neither of which establish the "extraordinary and compelling" circumstances required to warrant release under § 3582(c)(1)(A).

First, Wardle argues that sentencing disparities and a newly expanded "safety valve" in the First Step Act of 2018 form a basis for compassionate release. Wardle argues that §§ 403–04 allow for "sentence reductions based on the retroactive application of the Fair Sentencing Act," (DE 386), but she was convicted and sentenced *after* the First Step Act was already in effect, making any retroactive application inapplicable to her case. Further, none of the cited reforms apply to Wardle because she was convicted of offenses that do not trigger mandatory-minimum sentencing. But even if the Act were applicable, the Sixth Circuit has held that sentencing disparities "arising from a non-retroactive or partially retroactive sentencing change" do not qualify as an "extraordinary or compelling" reason justifying

compassionate release. *See United States v. Corona*, No. 20-6309, 2021 WL 2345769 (6th Cir. June 8, 2021) (citing *United States v. Tomes*, 990 F.3d 500, 505 (6th Cir. 2021)).

Next, Wardle argues that her rehabilitative efforts are "extraordinary and compelling" grounds that justify compassionate release. But, when considered alone, rehabilitation was the "one reason that Congress precluded" from being considered as "extraordinary and compelling," and absent other factors it cannot constitute grounds for compassionate release. *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020); *see also* 28 U.S.C. § 994(t). Because Wardle's arguments regarding the First Step Act are inapplicable, her rehabilitative efforts stand alone and thus cannot be considered "extraordinary and compelling" reasons justifying compassionate release.

### III. Consideration of §3553(a) Factors

#### A. Legal Standard

Even assuming, however, that extraordinary and compelling circumstances do exist, the Court must still consider whether "the [applicable] factors set forth in section 3553(a)" support the requested sentence reduction. 18 U.S.C. § 3582(c)(1)(A); *United States v. Jones*, 980 F.3d 1098, 1108–11 (6th Cir. 2020). These factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>   (B) to afford adequate deterrence to criminal conduct;
>   (C) to protect the public from further crimes of the defendant; and
>   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; [and]
>
> (3) the kinds of sentences available;

18 U.S.C. § 3553(a)(1)–(3).

The § 3553(a) factors also include the "kinds of sentence and the sentencing range" established in the guidelines; "any pertinent policy statement" issued by the Sentencing Commission; "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;" and "the need to provide restitution to any victims of the offense." *Id.* § 3553(a)(4)–(7).

### B.      Consideration of 3553(a) Factors Shows Release is Inappropriate

The Court considered these factors extensively at Wardle's sentencing hearing. (*See* Sentencing Tr.) The Court has reconsidered these factors for the purposes of this motion. The nature and circumstances of Wardle's crimes are serious—she was convicted of two counts of distribution of oxycodone and one count of conspiracy to distribute oxycodone. (DE 197.) While Wardle does not have a significant criminal history (PSR ¶¶ 39–44), her drug trafficking offenses suggest that she poses a continued danger to the safety of the community. *See United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010) ("[D]rug trafficking is a serious offense that, in itself, poses a danger to the community.") In searching Wardle's residence, officers also found multiple firearms. (PSR ¶ 22; Sentencing Tr. At 8:6–11.) Based upon the record before it, the Court could not find that Wardle would not pose a danger to the community if she were to be released.

The guideline range for Wardle, as established under the sentencing guidelines, was 151 months to 188 months, but Wardle was sentenced to 148 months. (PSR ¶ 68; Sent. Tr. at 3:8–11; DE 287 at 2.) Therefore, Wardle was sentenced below the sentencing guideline range. And Wardle has only served approximately 15% of her below-the-guidelines-range term. Considering the need for Wardle's prison term to deter future criminal conduct, promote respect for the law, and provide just punishment, release would simply not be appropriate.

Wardle nevertheless argues that "she has made huge changes in her educational and vocational record since being incarcerated" and "[s]he should be considered for a sentence

reduction" based upon those efforts. (DE 386.) Wardle has provided little detail or documentation about her efforts, and her argument is undermined by her simultaneous "attempts to minimize her offenses" on appeal to the Sixth Circuit. (DE 390 at 3.) At sentencing, this Court found that Wardle "had an active and intentional role in drug distribution" and "was right in the thick of it," and that the evidence "suggest[ed] long-standing, fairly large-scale drug distribution." These findings are supported by the record, including Wardle's unobjected to presentence report, which calculated a drug quantity of at least 5000 oxycodone tablets and assessed enhancements for maintaining a premise for the purpose of drug distribution and possessing a firearm during the offense. (DE 290 at 8–9.) While efforts to reform and rehabilitate oneself are to be commended, Wardle's efforts do not negate the seriousness of her offense nor the harm caused by her crimes. On balance, vague and conclusory notions of rehabilitation simply do not outweigh the serious nature of Wardle's crimes, the need to deter future criminal conduct, promote respect for the law, and provide just punishment.

Thus, even assuming Wardle's motion was timely and presented "extraordinary and compelling" reasons for release, reconsideration of the § 3553(a) factors show release would not be appropriate.

## Conclusion

Accordingly, because Wardle has not shown that she has complied with the administrative exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A), it is not appropriate to order Wardle's release at this time. The Court HEREBY ORDERS that Defendant Patsy Wardle's motion for compassionate release (DE 386) is DISMISSED WITHOUT PREJUDICE.

Dated October 14, 2021.

*Karen K. Caldwell*
KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY